IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

DAVID P. HUNT,                      )
                                    )      Case No. CV08-69-S-EJL
            Plaintiff,              )
                                    )      **REPORT AND RECOMMENDATION**
vs.                                 )
                                    )
TEAM PERFORMANCE, INC., et al,      )
                                    )
            Defendants.             )

## REPORT

The Court has before it Defendants' Renewed Motion to Dismiss (Docket No. 25). Having carefully reviewed the briefing submitted by the parties and the record, as well as holding oral argument on the initial motion, the Court recommends, for the following reasons, that Defendants' Renewed Motion to Dismiss be Denied.

## I.
## Background

Plaintiff David Hunt filed a Complaint (Docket No. 1) on February 11, 2008 against Team Performance Inc., Jack Kyle ("Kyle"), Fred Goode, Les Niederklein, and Brandon Kyle containing allegations relating to the formation and business of Team Performance, a fire alarm and security monitoring system installation business. Plaintiff's Complaint alleges claims for fraud against Kyle, conspiracy to commit fraud against all individual defendants, conversion against all defendants, conspiracy to commit conversion against all Defendants, and also requests writ of mandamus against Team Performance and declaratory relief from the Court.

**Report and Recommendation - Page 1**

On March 3, 2008, Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) (Docket No. 7) on all claims except the claim for declaratory relief.  Following referral of all pretrial motions (Docket No. 17), the Court held oral argument on the Motion to Dismiss on December 4, 2008. (Docket No. 22).  At oral argument, the parties stipulated to dismissal of Count V of the Complaint, Writ of Mandamus,[1] and Plaintiff made a motion requesting leave to file an amended complaint that would include new causes of action.[2]  Counsel for the Defendants did not oppose these amendments and the Court granted Plaintiff leave to file an amended complaint giving Defendants leave to renew their Motion to Dismiss, if necessary.  Plaintiff filed his Amended Complaint (Docket No. 24) on December 22, 2008.[3]  The Defendants filed a Renewed Motion to Dismiss (Docket No. 25) on January 5, 2009, incorporating the arguments made in previous briefing as well as those made during oral argument.  Plaintiff filed his Renewed Response to the Defendants' Renewed Motion to Dismiss (Docket No. 26) on January 29, 2009.  The Renewed Motion to Dismiss is now ripe and will be decided without further oral argument or briefing.

Plaintiff's Amended Complaint (Docket No. 24) alleges that, beginning in 2005 and continuing through February of 2006, Plaintiff and Kyle discussed leaving their employment and

[1] The Court entered an Order dismissing the Writ of Mandamus claim on December 12, 2008. Order, Docket No. 23.

[2] After the Motion to Dismiss (Docket No. 7) was fully briefed, Daniel E. Williams was substituted in as counsel for the Plaintiff.  Mr. Williams had no involvement in drafting the original complaint and the briefing filed in Response to the Motion to Dismiss.

[3] Plaintiff's Amended Complaint changed some of the allegations in the original complaint, discussed in more detail herein, and included three new causes of action for breach of contract, breach of fiduciary duty and an accounting.  Amended Complaint, Docket No. 24, ¶¶73-89.

starting a new company.  During this period, Plaintiff and Kyle also discussed the topic of each person's relative equity share in the new company, Team Performance, arriving at the conclusion each party would receive a 50/50 share.  Amended Complaint, Docket No. 24, ¶¶13, 14. The Amended Complaint details efforts made by Kyle and Plaintiff to develop business for the new company, culminating in an agreement with Sportsman's Warehouse to use Team Performance's services. *Id.* at  ¶¶15-21.  In early February of 2006, Plaintiff allegedly paid to incorporate Team Performance in Nevada.  *Id.* at ¶22.  The Articles of Incorporation listed Plaintiff and Kyle as the initial directors. *Id.* at ¶23.  Later that February, Plaintiff and Kyle's former employer took legal action against Kyle. *Id.* at ¶25.  During the presentation of evidence in connection with a motion for preliminary injunction in that matter, Kyle testified that Plaintiff "absolutely" had an equity ownership interest in Team Performance and that Team Performance was Plaintiff's idea. *Id.* at ¶27.  In March of 2006, allegedly based on discussions between Kyle and Plaintiff regarding Plaintiff's ownership of Team Performance, Plaintiff borrowed and contributed $206,000.00 of his personal funds to Team Performance and pledged his personal credit for Team Performance's benefit.  *Id.* at ¶¶28, 29.

After Plaintiff's contribution, Kyle, Brandon Kyle, Goode, and Niederklein, who were allegedly purporting to be officers, directors and shareholders of Team Performance Inc., met "purporting to conduct Team Performance's corporate business."[4]  *Id.* at ¶29.  At the meeting, they issued to themselves shares of the company for $1 per share, excluding Plaintiff. *Id.*  In

---

[4] Plaintiff alleges that, because this was done without his consent as an initial director, none of the corporate actions taken by Team Performance was valid.  As a result, his claim for declaratory relief requests that the Court declare all actions taken by the corporation, including all distributions and disbursements as well as issuance of stock, void.  Amended Complaint, Docket No. 24, ¶¶65-72.

**Report and Recommendation - Page 3**

August of 2006, after Plaintiff had been providing services for Team Performance, Kyle

allegedly wrongfully fired Plaintiff, excluding him from the business. *Id.* at ¶31.  In September

of 2006, Team Performance paid $168,994.14 to Plaintiff, based on his original contribution plus

other funds Plaintiff contributed.  Plaintiff accepted the money, reserving his claims regarding

his equity position. *Id.* at ¶32.

## II.
## Discussion

A motion to dismiss under Rule 12(b)(6) will be granted when the complaint fails to state

a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  In reviewing a complaint

under this Rule, all allegations of material fact are taken as true and construed in the light most

favorable to the nonmoving party.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

However, a complaint, or portions thereof, will be dismissed if the plaintiff cannot establish "any

set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*,

127 S. Ct. 1955, 1969 (2007).

A complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed

factual allegations...but requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  *Id*. at 1964-65 (internal citations omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at

1965.  The complaint must plead "enough facts to state a claim of relief that is plausible on its

face."  *Id*. at 1974.

**Report and Recommendation - Page 4**

A different pleading standard applies to claims of fraud or mistake.  Rule 9(b) states: "a party must state with particularity the circumstances constituting fraud or mistake." Fed. Rule Civ. Pro. 9(b).   This requires that a complaint describe the alleged fraud in enough detail that a defendant can prepare a sufficient answer.  *Travaglia v. Johnston,* 42 F.3d 1402 (9th Cir. 1994) *citing  Moore v. Kayport Package Express, Inc*., 885 F.3d 531, 540 (9th Cir. 1989).  Statements of the time, place and nature of the alleged fraudulent activities are sufficient to satisfy this requirement, while mere conclusory allegations of fraud are not.  *Id*.  Additionally, the pleading must identify what is false or misleading about a statement, and why it is false.  *In re GledFed, Inc. Securities Litigation*, 42 F.3d 1541 (9th Cir. 1994) (superceded by statute) *citing Black v. Dierdorff*, 856 F.2d 1365 (9th Cir. 1988).[5]

Defendants renewed their Motion to Dismiss arguing that Counts One (Fraud), Two (Civil Conspiracy/Fraud), Three (Conversion), and Four (Civil Conspiracy/Conversion) should be dismissed.   The Court will address each of Defendants' arguments in turn.

A.      **Plaintiff's Fraud Claim**

Defendants argue that the claim for fraud[6] cannot lie for two reasons: first, because "a promise to do something in the future which is not done cannot serve as the basis for a fraud claim"; and second, because the claim for fraud was not plead with sufficient particularity under

---

[5]  The Court in *GlenFed* also noted that simple allegations can satisfy the 9(b) requirement.  *In re GlenFed*, 42 F.3d at 1548.

[6]  The elements of fraud include: 1) a statement or a representation of fact; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity; 5) the speaker's intent that there be reliance; 6) the hearers ignorance of the falsity of the statement; 7) reliance by the hearer; 8) justifiable reliance; and 9) resultant injury.  *Mannos v. Moss*, 155 P.3d 1166 (Idaho 2007).

Rule 9(b) of the Federal Rules of Civil Procedure. Memo. In Support, Docket No. 8, p. 8; Reply, Docket No. 15, p. 7.

As a general rule, fraud cannot be based upon future promissory statements, or upon the mere failure to perform a promise or an agreement to do something in the future. The allegedly false misrepresentation must concern past or existing material facts. However, the Idaho Supreme Court has recognized two exceptions to this general rule: 1) if the speaker made the promise without any intent to keep it but only to induce action upon the part of the promisee; and 2) if the promise was accompanied by false statements of existing fact which showed the promisor's ability to perform the promise. *Gillespie v. Mountain Park Estates, L.L.C.*, 132 P.3d 428, 431 (Idaho 2006). Plaintiff argues that his cause of action falls into the first exception, because Kyle's promise to share ownership with him 50/50 in the company was made only to induce Plaintiff to provide start up capital to the business, and that Kyle had no intention of actually giving Plaintiff an ownership role in the business. Response, Docket No. 11, p. 7. Plaintiff further alleges that this promise of equity ownership induced Plaintiff to contribute significant start up capital to Team Performance. Plaintiff alleges that, after he contributed the capital, the Defendants wrongfully excluded him from his rightful role in Team Performance. The Court agrees with Plaintiff that, taking all of these allegations as true, the Amended Complaint states a valid cause of action for fraud under the first exception.

Second, Defendants argue that the cause of action for fraud is not plead with sufficient particularity under Rule 9(b), specifically because Plaintiff does not define his equity interest and does not describe how the representations regarding his equity interest were false. As noted above, identification of the time, place and nature of the allegedly fraudulent activities with

**Report and Recommendation - Page 6**

sufficient particularity to allow the Defendant to answer the allegations will satisfy Rule 9(b).  In Plaintiff's Renewed Response (Docket No. 25), he argues that he cured any alleged deficiencies in his Amended Complaint by alleging that, in all discussions regarding Team Performance with Kyle, Kyle represented that Plaintiff and Kyle would be 50/50 owners of Team Performance and all subsequent discussions assumed him having this equal equity interest in the new venture. Renewed Response, Docket No. 26, p.2.  Amended Complaint, Docket No. 24, ¶ 13, 14, 27, 28, 35, 36.   The Court agrees.  The Amended Complaint, particularly with specification of the alleged equity ownership interest, provides Defendants sufficient information to respond to the allegations and prepare their answer.  *See Travaglia v. Johnston,* 42 F.3d at 1402.

**B.      Plaintiff's Conspiracy to Commit Fraud Claim**

To state a claim for conspiracy, the plaintiff must allege there "is an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner." *McPheters v. Maile,* 64 P.3d  317, 321 (Idaho. Ct. App. 2003). The Defendants argue that the claim of conspiracy to commit fraud must be dismissed for three reasons: 1) the claim is barred by the doctrine of intracorporate immunity; 2) the complaint does not allege the existence of a plan or agreement to defraud; and 3) the claim is not plead with sufficient particularity to satisfy Rule 9(b).  Each of Defendants' arguments will be addressed below.

1.        **Intracorporate Immunity Doctrine**

First, Defendant argues that the intracorporate immunity doctrine[7] bars the conspiracy claim.  Specifically, Defendants argue that, if the intracorporate immunity doctrine applies here, Hunt cannot meet the element of conspiracy that requires two or more persons to be involved.

The intracorporate immunity doctrine treats the corporation and its actors as one legal entity incapable of conspiring with each other.  *Construction and Application of Intracorporate Conspiracy Doctrine as Applied to Corporation and Its Employees - State Cases*, 2 A.L.R. 6th 387 (2005).   Idaho has adopted the principle underlying the intracorporate immunity doctrine in anti-trust cases, and the language in the *Afton Energy* case suggests the principle could extend to the situation before the Court.  *See Afton Energy Inc. v. Idaho Power Company*, 834 P.2d 850 (1992) ("the Ninth Circuit stated, 'A corporation cannot conspire with its officers or agents to violate the antitrust laws.' This principle logically extends to alleged conspiracies between a corporation and its directors, and precludes Afton's antitrust claims") *citing Chapman v. Rudd Paint and Varnish Co.*, 409 F.2d 635, 643 n.9 (9th Cir. 1969).  However, the majority of case law from other jurisdictions recognizes exceptions to application of this principle, including situations where the corporate employees involved in the alleged conspiracy act outside the scope and course of their employment.  *Construction and Application of Intracorporate Conspiracy Doctrine as Applied to Corporation and Its Employees - State Cases*, 2 A.L.R. 6th 387 (2005).

---

[7] An opposing theory, the intercorporate conspiracy doctrine, deems a corporation to be capable of engaging in a conspiracy with its own agents.

Defendants appear to acknowledge this exception, stating in their initial memorandum in support of their Motion to Dismiss that: "Hunt's allegations do not assert that the actions of any of these individuals were conducted outside the course and scope of their employment as officers and /or directors.  In fact, Hunt's allegations state just the opposite and assert that these actions were taken at a corporate meeting of Team Performances officers and directors." Memo. In Support, Docket No. 8, p. 10.   The Defendants did not readdress this issue in their Renewed Motion to Dismiss.  However, Plaintiff's Amended Complaint alleges that the individually named defendants "purport" to be officers or directors or were "purporting to conduct Team Performance's corporate business" during the various time periods at issue. Amended Complaint, Docket No. 24, ¶¶3, 4, 5, 6, 29.  Taking all the allegations in the Amended Complaint as true, it alleges a conspiracy between individuals who "purported to act as officers, directors, and/or shareholders of the corporation.   Therefore, the intracorporate immunity doctrine does not bar Plaintiff's conspiracy claim.  This conclusion is also supported by Plaintiff's assertion that the individual defendants could not have been acting within the scope of their employment when they allegedly committed fraud,  because no corporate duties had yet been established, and because, as one of the two initial directors of Team Performance,

Plaintiff's consent was required for Team Performance to take corporate action.[8]  Response,

Docket No. 11, p. 8.

> ## 2.      Alleging the existence of a plan or agreement to defraud

Defendants next argue that the complaint does not allege that a plan or agreement existed

between the individual defendants to defraud the Plaintiff.  The Defendants cite the following

passage from *Mannos v. Moss* to support their argument: "An agreement is the foundation of the

conspiracy charge and there must be some showing of specific evidence of a plan or agreement

to defraud to demonstrate the pendency of the conspiracy at the time the alleged fraud occurred."

*Mannos v. Moss*, 155 P.3d at 1174.  This passage indicates specific evidence must be presented;

however, the conspiracy claim in *Mannos* was decided on a motion for summary judgment and

not on a motion to dismiss.  Plaintiff here responds that his Amended Complaint specifically

alleges that the other Defendants "tortiously agreed to exclude Dave Hunt from receiving an

_____

[8]  Plaintiff cites to Nev. Rev. Stat. §78.315 to support the conclusion that any action taken
without Hunt's consent was illegitimate.  The text of Nev. Rev. Stat. §78.315 requires that a
majority of the board of directors be present to constitute a quorum for the transaction of
business, and with only two initial directors, Plaintiff may be correct in alleging that any action
taken without him was not legitimate.  The text of NRS §78.315 states as follows:

> NRS §78.315 Directors' meetings: Quorum; consent for actions taken without meeting;
> participation by telephone or similar method.

> 1. 1. Unless the articles of incorporation or the bylaws provide for a greater or lesser
> proportion, a majority of the board of directors of the corporation then in office, at a
> meeting duly assembled, is necessary to constitute a quorum for the transaction of
> business, and the act of directors holding a majority of the voting power of the directors,
> present at a meeting at which a quorum is present, is the act of the board of directors....

equity position in Team Performance, despite Tom Kyle's representations that Dave Hunt was

and would be a shareholder, and despite the benefits Tom Kyle, Goode, Niederklein, and

Brandon Kyle received as shareholders from Dave Hunt's contributions, which included

$206,000.00 in start-up capital." Complaint, Docket No. 1, ¶27; Amended Complaint Docket No

24, ¶47.

       The Court finds that these allegations, considered in the light most favorable to the

Plaintiff, are sufficient to state a claim for conspiracy, because they allege, or at a minimum

infer, that all Defendants were aware of Plaintiff's alleged equity position and that they met and

consciously excluded him from their business meetings.  Therefore, the Renewed Motion to

Dismiss with respect to the conspiracy to commit fraud claim should be denied.

**C.**      **Plaintiff's Conversion Claim**

       The Defendants argue that Plaintiff's claim for conversion must be dismissed, first

because the Team Performance stock was never issued to Plaintiff.  Memo. In Support, Docket

No. 8, p. 7.  Further, Defendants argue that Plaintiff's claim cannot survive because a claim for

conversion cannot be based on an intangible property right that is not merged into a document or

manifested by a tangible instrument. *Id.* at 6-7.  Plaintiff responds that there is a split of authority

relating to conversion claims based on intangible property.  Plaintiff further argues that Idaho

law does not prohibit such claims, urging the Court to adopt the view expressed by "western

states"[9]  that intangible property can be the subject of a conversion claim. The Court will address each argument in turn.

Idaho law defines conversion as a distinct act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with rights therein.  *Peasley Transfer & Storage Co. v. Smith*, 979 P.2d 605, 616 (Idaho 1999).  Thus "a complaint which alleges that the plaintiff is the owner and entitled to the possession of property therein described and that defendant converted it to his own use, and which states the value of the property, or alleges that plaintiff has been damaged in a sum named, sufficiently states a cause of action for conversion." *Id.*

As noted above, Defendants argue that Plaintiff cannot state a claim for conversion because the stock in Team Performance was never issued to him and thus he never possessed the property as required by Idaho law.  Plaintiff argues that he is entitled to the stock based on his agreement with Kyle that Team Performance would be owned 50/50[10] and Kyle's testimony that Plaintiff "absolutely" had an ownership interest in Team Performance. Amended Complaint, Docket No. 24, p. 6.  The Court, taking these statements as true and construing them in the light most favorable to the Plaintiff, finds that they satisfy the standard for pleading set forth above in *Peasley*, requiring plaintiff to plead that he is "the owner and entitled to the possession of

---

[9] Plaintiff cites cases from California and Washington to support this argument that western states take the position that intangible property can be the subject of conversion. Plaintiff also cites probably the most controversial case to date in Washington, *Lang v. Hougan*, which held that even the goodwill of a company, because it can be assigned a monetary value, can be converted as intangible property. 150 P.3d 622 (Wa. App. Div. 2007).

[10] The inclusion of this allegation in the Amended Complaint also cures Defendants' contention that without stating the amount of equity Plaintiff allegedly owned, a claim for conversion cannot be sustained. See Reply, Docket No. 15, p.5.

property therein described." *Peasley Transfer & Storage Co. v. Smith*, 979 P.2d at 616.  Thus, Plaintiff's Amended Complaint sets forth sufficient facts to describe an ownership interest in Team Performance and survives Defendants' motion to dismiss.

Second, Defendants argue that the conversion claim fails because intangible property cannot be the subject of a conversion action.  Historically, conversion was a remedy for the taking of another's lost goods, applicable only to tangible property.  *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) *citing* Prosser and Keaton on the Law of Torts §15, at 89, 91 (W. Page Keeton ed., 5th ed. 1984).  More recently, almost all jurisdictions have eliminated this rigid limitation, at least to some degree.  *Id.*  Idaho recognized that stock could be the subject of conversion as early as 1932: "The rule is firmly established that if a corporation wrongfully refuses to recognize a valid transfer of stock and permit a transfer upon its books, the transferee may treat the wrongful refusal to allow a transfer as a conversion of the shares and recover damages in an action of trover for the conversion." *Tobias v. Wolverine Min. Co.*, 52 Idaho 576 (1932).[11]

The Amended Complaint alleges that Plaintiff is entitled to have Team Performance issue shares of stock to him and that the Defendants converted Plaintiff's property right by preventing issuance of the stock - an intangible property right that is customarily merged into a document - and, thereby, effectively prevented the exercise of the other intangible management and economic rights that come with it.  Amended Complaint, Docket No. 24, ¶¶51-56.  The Court

---

[11]  This conclusion that intangible property can be the subject of conversion also is consistent with the Restatement approach which states, "One who effectively prevents the exercise of intangible rights of the kind customarily merged in a document is subject to a liability similar to that for conversion, even though the document is not itself converted."  Restatement 2d Torts § 242 (1965).

**Report and Recommendation - Page 13**

finds that, taking all of these allegations as true, the Amended Complaint does state a claim for conversion.  Thus, the Renewed Motion to Dismiss with respect to the conversion claim is denied.

**D.      Plaintiff's Conspiracy to Commit Conversion Claim**

As noted above, to state a claim for conspiracy, the plaintiff must allege that there "is an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner." *McPheters v. Maile,* 64 P.3d  317, 321 (Idaho. Ct. App. 2003). Defendants argue that Plaintiff's claim for conspiracy to commit conversion fails because Plaintiff's claim for conversion fails. As the Court discussed above, Plaintiff has stated a cognizable claim for conversion.  Thus, the conspiracy to commit conversion is also a valid cause of action and the Renewed Motion to Dismiss with respect to this claim should be denied.

## <u>RECOMMENDATION</u>

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS**

**HEREBY RECOMMENDED that:**

1)      Defendants' Renewed Motion to Dismiss (Docket No. 25) be **DENIED.**

Written objections to this Report and Recommendation must be filed within ten (10) days

pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(b), or as a result of failing to do so, that

party may waive the right to raise factual and/or legal objections to the United States Court of

Appeals for the Ninth Circuit.



DATED: May 18, 2009

Honorable Candy W. Dale
Chief United States Magistrate Judge